Good morning. Good morning. May it please the Court. I'm Karen Landau, and I represent Christopher Ablett. Let me ask you a question, too. Do you think self-defense continues on to when the victim, to use a word, was lying flat on his stomach and your client put a gun to the back of his head and executed him? Well, Your Honor, your question has already defined the answer, and of course not. All right. What are the facts that I think are correct? I think that the facts were disputed, and there was evidence of actually there was Disputed facts don't matter a lot in a criminal trial. I'm sorry? I said disputed facts don't matter a lot in a criminal trial. Well, they're not What is it that's wrong with the concept? Is it the facts that the man was lying flat on his stomach? Well, I think it wasn't at all. Well, first of all, we did have evidence. Yes, there was evidence that the government put on its case. There were people who saw Mr. Ablett who testified that there was a final coup de grace shot, if we can call it that. But there was evidence that that was not the case. There was evidence from Mr. Ablett, which was the only evidence, because he had no evidence about the decedent's character because it was excluded. There was evidence from Mr. Ablett that he was under attack and that he fired multiple shots. Okay. So all of that, yes. But then we get to the point where the guy from the other gang is flat on his stomach and Mr. Ablett shoots him in the back of the head. Is that I don't think that was – I think, Your Honor, that is not an undisputed fact. It was disputed and the jury could have made a contrary decision. And the jury could have made a contrary finding. The jury could have made a finding that Mr. Ablett – first of all, the shot wasn't – as my understanding, that there was – first of all, there was evidence that the body was moved after death, before the paramedics arrived. As I recall, the shot was not exactly to the back of the head, but perhaps to the side. But Mr. Ablett testified, regardless of all that, Mr. Ablett testified that he fired shots at vehicles, the people in vehicles, as I recall it, and then he fired another shot at Mr. Guardado. And you know, obviously – and his testimony, if believed, would support an inference that he fired that final shot as part of this barrage of self-defense. I wouldn't – it's probably not fair to call it a barrage. I thought he testified he was shooting actually at Mr. Guardado's son, who was actually approaching at that particular point. That was one shot. And then, as I recall at the end, and I'd have to – I can open up the transcript, but he said, well, he said there was people – I saw people coming at a car, I heard this loud cussing, and I fired a shot here and a shot there, and I believe it's in the brief. But either shot would have killed him. He shot him in the chest, first he was going to die in four minutes, according to the pathologist, and then he was executed. That's correct. Both shots were fatal. So I think the question is – so. What's your best argument? So I think the best argument is that – I think the important point here is that the judge excluded all of the evidence that pertained to Guardado, the decedent, individually. He allowed in a modicum of evidence about the Hells Angels, and of course the government presented a lot of evidence about the Mongols and about Mr. Ablett, including the – not only that Mr. Ablett was a Mongol, which was not really disputed, but that, you know, Mr. Ablett had a tattoo on his body that said, may God have mercy on my enemies. And other character evidence that they found in his house, Mongol slogans, the Mongol fight song, you know, this sort of thing. So – but Mr. Ablett was not allowed to present any evidence about Guardado, who was not by any means a peaceful character. Extensive testimony about the Hells Angels, about their violence, about the way they would attack the Mongols. They did – I thought he excluded the evidence in regard to this one individual victim here, but the fact is nobody could have left that particular courtroom not knowing that the Hells Angels were violent, that they would attack Mongols on sight when they were in their territory. And all of that history of violence came out. It's just the specific things about Mr. Guardado. And that – and that is what was important, Your Honor, in this case, because this is a self-defense case, and a defendant loses the right to self-defense if either he starts the fight or if there is mutual combat. And in this case, there was no – aside from Mr. Ablett's own testimony, there was no evidence about who threw the first punch. There was evidence from government witnesses that Guardado got in his face, but that is not the same thing as saying that Guardado was the initial aggressor. And it's very well established in this circuit and in pretty much every, you know, numerous State courts that a defendant who is claiming self-defense is entitled to present corroborating evidence about who was the first assailant, and that includes the victim's character. But here, the Court excluded everything. And, you know, our – my point on appeal is, look, the Court could have said, well, look, I'm not going to admit this stuff that's too old, or I'm going to exclude this stuff that's based on here. There are certain things that certainly the Court could have drawn a line, but the Court drew the line to exclude it all. And that denied him his constitutional right to present a defense. You know – Kennedy, but you could have only introduced evidence about opinion, right? Under 405, you could have had someone come in and say, I think that he's a violent person, but you can't introduce specific conduct, the specific acts. So what the defense tried to do, looking from hindsight, obviously, is to try to get the specific acts in by finding somebody who observed the specific acts, and then get the person to say, oh, yeah, based upon the specific act, I think this is a violent person. Well, that is essentially a way of getting in the specific conduct, which is directly prevented by the rules, by 404. Okay. Well, I think there's two answers to that. The first is that, for one thing, some of it was admissible as modus operandi. Modus operandi – I mean, the government does this all the time. The government gets in prior bad acts on the basis that it's modus operandi. And certainly the facts and the evidence that Guardado frequently attacked in combination in concert with others was modus operandi. So that's the first thing, is that some of it – maybe not all of it, but some of it could have come in. Second of all, there is a – there is a divergence between the foundation that's necessary for reputation and the foundation that's necessary for opinion. And the full parameters of that have not been explored in the circuit. So, you know, yes, the judge found that there wasn't enough foundation for this opinion evidence. But that's – I would submit that if there had been other evidence that was better, and then maybe the judge would have made the right call. But I think when you're running up against a defendant's constitutional right to present a defense, and there isn't anything else, then at that point, the Federal rule and the desirable foundation, especially since it's not clear how much of a foundation is needed, has to give way. And, in fact, there is – you know, that's another – to the improper exclusion of evidence, is it more probable or not that it would have affected the verdict? Well, it's a – it's a – it's a constitution. And because we are arguing the – you know, because what I have argued for Mr. Ablod is that he was deprived of his right to present a defense, it's harmless error. So it has to be harmless beyond a reasonable doubt. Totally deprived of the right. I'm sorry? That means that the judge said, no, you can't present a self-defense defense. But if he allows some evidence of it and he allows them to argue it, but he excludes some testimony, is that a total deprivation of the right to present a self-defense defense? I think in this case it slops over into the constitutional era. And the reason is that there was no corroboration. He was allowed to testify himself, and there was testimony about the Hells Angels. But there was nothing that supported, that went to Gordado's character. And if you look at the DePetris v. Kuykendall case, which is a habeas case, that – that's a good example. Now, of course, in that case, it was slightly – Do you still have habeas cases? Well, I think there's a few out there, Your Honor. One – not many. It's old. It's 10 years old. But it did decide on the constitutional issue. And, you know, I know that the – I can see I'm – well, I'll reserve some of my time for rebuttal. But, you know, I think the point is, is that, look, the government may have won on a legitimate basis, but we don't know because everything was kept out. In fact, I mean, to add – I mean, the Court didn't even let the defense expert testify about the meaning of Gordado's patches, which would have pointed – now, if he had, we might even have a different – That is your best claim. And there's a patch which shows – shows that it's violent, and he could testify as an expert about Hell's Angels. So perhaps that was – that was kept out improperly. Can you actually suggest, though, that that would be admitted under 403? The prejudicial impact of that could have clearly outweighed his – Well, why would the President – Or whether that – I mean, the fact that a patch – a description of a patch was not introduced really puts at jeopardy the entire verdict. Well, it's not just one patch. It's a couple of patches. And it's – it's because he was – actually, he had several patches, and they all indicated that he personally had engaged in prior acts of violence. And, you know, so first of all, the 403 balancing clearly weighs in favor of the defendant in this case, because the prejudicial impact has to substantially outweigh the probative value, and the probative value goes to the first assailant. And in the prejudicial impact of describing a patch, it's not – it's not going to emotionally affect the jury. So we certainly win on the 403 balancing. Then if you're going to prejudice, again, yes, the government had – I can't say the government didn't have a substantial case. It did. But Mr. Ablett had a case, too, and he didn't have anything to corroborate his own story. So evidence that Guardado was the first assailant was critical, and that is where the – I mean, first of all, the point of initial assailant is critical to the determination of self-defense, and that's what he lacked. And, in fact, it's particularly important when the government is also arguing mutual combat and saying, hey, look, you're not entitled to this anyway, because you came to San Francisco, and you had a Mongol's T-shirt on, you know, and everything else. And so, you know, that muddies the waters even more. So that's – these are – you know, as I said, in this case, the court drew a line, and it was the wrong line. Of course, he came to San Francisco with two weapons – well, three weapons, two guns and a knife, and the victim in this particular case, not armed. And as a result, in the fight, he stabbed a number of times and then eventually was shot. You know, as I said, Your Honor, I'm not – I can't dispute that that's in the record, but I can dispute that there was – I mean, there was his testimony, and there was other testimony suggesting that there were other people around, that his son may or may not have been involved, that there may have been a carload of other people who were armed. There was varying testimony regarding the shots fired. It was not all consistent. And it's, you know, everyone vanished. You know, I mean, I can't say – this was – ultimately, it was a jury determination. The question was, did the Court's ruling impact that jury determination? And I would submit that it did. And if the Court doesn't have more questions, I'll save my minute and a half. Thank you. Good morning. May it please the Court. Barbara Valliere on behalf of the United States. The district court properly exercised its discretion in this case to exclude the lay and the opinion testimony. In addition, right or wrong with regard to some of those rulings, the Court's rulings on the opinion testimony did not deprive the defendant. A meaningful opportunity to present his self-defense claim, where the defendant testified at length. The defendant presented 12 witnesses, including his own expert witness, about the practices of the Hells Angels. Ablett cross-examined the government's undercover officer regarding the practices of the Hells Angels and their violent tendencies. And lastly, the jury was instructed not only on pure self-defense, but imperfect self-defense, as well as heat of passion. Even if, though, this Court were to conclude that the defendant was somehow wrongly deprived of some evidence in this case, the error was harmless beyond a reasonable doubt for two specific reasons. First, the eyewitnesses on the scene on September 2nd, including Mr. Ablett, all testified that Mr. Guardado was unarmed, and that he even backed into the street prior to the time that Mr. Ablett took the shot that hit him in the chest. In addition to that, the eyewitnesses, and again, including Mr. Ablett, all testified that Mr. Guardado was lying immobile in the middle of the street before he, Mr. Ablett then shot him in the head. I'd like to clarify a couple of points with regard to that last point for the Court. One is, it was not a contradicted fact that the defendant, that the victim was lying in the middle of the street, and that he was lying at least on his, somewhat on his side or on his stomach. The, all the eyewitnesses aside from Mr. Ablett had said that he was lying on his stomach. Mr. Ablett said that he was lying somewhat on his, on his side, but that he saw that he is, his face was away from him, and that he did aim for the upper body, and that he shot him in the lower part of the neck. And so that was the eyewitness testimony, including Mr. Ablett's, at the time that he took the shot. In addition to that, there was no eyewitnesses that actually corroborated Mr. Ablett's claim, that there was this car full of Hell's Angels that drove by. In fact, the witnesses that Mr. Ablett called at trial, the ones that testified that were eyewitnesses on the scene, all corroborated the fact that what they saw leave the scene was a pickup truck speeding away, which was consistent with Marvell and Yu, the two witnesses, government witnesses who had arrived on the scene with Mr. Ablett, with their truck leaving the premises. There was nobody who ever saw an SUV, as the defendant claimed. With regard to the second person, and this is a critical claim with regard to the defendant's claim that he was somehow deprived of evidence that he, that Mr. Guardardo was the initial aggressor, the second person, no one ever, Your Honor, testified that that was, in fact, Mr. Guardardo's son. In fact, witnesses testified that Mr. Guardardo's son came around the block after the shooting had occurred. No one knows who the passerby was or the person was that actually approached the parties when they were fighting. What happened, the evidence showed that Mr. Guardardo approached Mr. Ablett on the street at 24th. He got in his face, according to the witnesses. There was a shouting match that occurred between the two of them, which devolved into a wrestling match and a fistfight. At that point, an individual, who no one knows the identity of, approached and said, told Ms. Marvell to get out of there, and she then turned and ran. Her testimony was that she was frightened of this man. Ablett's testimony was that he was frightened of this man and believed this person was a hell's angel. But there's no other testimony that establishes that, in fact, he was a hell's angel. I thought it was mentioned in one of the briefs that it was his son who was actually or at least it was argued that it was his son who was approaching. Well, there was definitely a lot of witnesses who saw Mr. Ablett's, I mean, Mr. Guardardo's son at least after the shooting and that he cradled the body or he touched the body. That was a lot of the defense testimony, but it was not the defense testimony that this person was, in fact, his son. In any event, the point of all this is that Mr. Ablett's claim that the lay opinion testimony and the expert testimony that didn't come in to trial somehow deprived him of his right to a defense because there was no evidence that he was to support his claim that Mr. Guardardo was the first aggressor or that there were other people on the who approached the parties when they were fighting is actually incorrect. There was evidence from Ms. Marvell that Mr. N, from this view from which the jury could infer, that Mr. Guardardo was the initial aggressor. In fact, it was the government that didn't even dispute that Mr. Guardardo actually approached him and confronted him verbally. There is no clear evidence except the defendant's testimony as to who threw the first punch, but there was testimony from Ms. Marvell that they immediately were yelling at each other and they immediately started fighting and that she at one point saw Mr. Guardardo on top of Mr. Ablett. So there was testimony in the record that the jury could infer that, in fact, Mr. Guardardo was the initial aggressor. In the end, however, none of this really matters because the defendant, even if he had a valid claim of self-defense, his own testimony, the manner in which he took those last two final shots and the reasons for taking those shots, and his own post-event conduct all demonstrated that, in fact, he was not acting in self-defense when he killed Mr. Guardardo that night. Thank you, counsel. Thank you. I don't have the transcript before me, but Mr. Ablett testified that he – well, first of all, the man who approached was a blond man. It can be inferred that he was Dominic Guardardo or he could have been another of Hell's Angels. His description somewhat matched Dominic Guardardo, who was a blond man, Dominic Guardardo being the victim's – the decedent's son. But Ablett testified that he believed there were four other men associated with the decedent. He pulled his gun, he shot at the blond man, he shot Guardardo, he fired two shots at the vehicle, and he shot Guardardo again. If believed, that is evidence of self-defense. We don't require people – we don't require somebody to be completely in control for self-defense. They just have to have acted reasonably under the circumstances. If there's no further questions, Judge Reinhart, I'll submit. Thank you. The case is argued will be submitted.
judges: Sessions, Reinhardt, Thomas